UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED
MAR 12 2010
CHRIS R. JOHNSON, CLERK
BY
DEPUTY CLERK

SARAH DEADNER, as Guardian of                                   PLAINTIFFS
the Estate and Person of DUFF DEADNER
an incapacitated person

vs.                           CASE NO.: CV 10-4029

LITTLE RIVER NURSING HOME, INC.;                                DEFENDANTS
LITTLE RIVER COUNTY, ANGELA DURHAM,
individually and in her official capacity; DAVID DEATON,
individually and in his official capacity; BRENDA GARNER,
individually and in her official capacity; and GEORGE
COLVERT, M.D., individually and in his official capacity

## COMPLAINT

Comes now the plaintiff, Sarah Deadner, as guardian of the Estate and Person of Duff Deadner, by and through their attorney, the Morris W. Thompson Law Firm, P.A., and for their Complaint against Little River County (the County) Little River Nursing Home, Inc. (the Nursing Home), Angela Durham (Durham), David Deaton (Deaton), Brenda Garner (Garner), and Dr. George Colvert, M.D. (Colvert) and states and alleges as follows:

I.   PARTIES

1.   Sarah Deadner is the duly appointed guardian of the Estate and Person of Duff Deadner pursuant to the order of the Little River County Circuit Court Case No.:.PR2009-46, and brings this action on the behalf of the Estate and Person of Duff Deadner.

2.   At all time material to this complaint, Duff Deadner (Mr. Deadner), was and is an Arkansas citizen and resident of the City of Ashdown, County of Little River, Arkansas.

1

3. Little River County, hereinafter referred to as "the County", is a local governmental subdivision of the State of Arkansas and as such is a person under 42 U.S.C. §§ 1981, 1983 and the Arkansas Civil Rights Act and is amenable to suit thereunder.

4. The County is the licensee and is authorized by the Office of Long Term Care to operate the Nursing Home as a long term care facility. As the owner and operator and licensee for the Nursing Home, the County is the proper person to sue under the Long Term Care Residents' Rights Act.

5. The Nursing Home is a corporation in good standing and listed with the Arkansas Secretary of State as a non-profit corporation. As a corporation in good standing it is a person amenable to suit under the law.

6. Furthermore, the County established the Nursing Home as a service to its residents and persons from the surrounding proximity. As the Nursing Home is a part of and under the County's operations, it is a governmental entity and a person under 42 USC §§ 1981and 1983 et seq., and the Arkansas Civil Rights Act and amenable to suit thereunder.

7. Upon information and belief, Nursing Home is not immune from suit.

8. The Nursing Home does business as Little River Nursing and Rehab, operating as a long term residential facility at 450 West Locke Street, Ashdown, Arkansas 71822.

9. At all relevant times, Durham was the Director of Nursing (DON) for the Nursing Home. She is sued in both her individual and official capacities. All complained of actions were taken by her under the color of her authority as DON

10. At all relevant times, Garner was the Acting Administrator of Little River Nursing Home, Inc. at the all relevant times. She is sued in both her individual and official capacities. All complained of actions were taken by her under color of her authority as Acting

Administrator.

11. Deaton, at all relevant times, was the facility Chief Executive Officer, CEO. he is sued in both his individual and official capacities. All complained of actions were taken by him under the color of his authority as CEO.

12. Covert, at all relevant times was the Medical Director for the Nursing Home. He is being sued in his individual and official capacities. All actions complained of were taken by him under color of his authority as medical director.

II. JURISDICTION AND VENUE

13. This action is brought to enjoin and redress race discrimination brought pursuant to 42 U.S.C. §1981, 42 U.S.C. § 1983 and the Arkansas Civil Rights Act of 1993 (ACRA), codified at A.C.A. § 16-123-101 et seg; It seeks to redress injuries and damages caused by deprivations of rights protected by the Arkansas Long Term Care Resident's Act, A.C.A. § 20-10-1201 et seg. This suit also states a cause of action for breach of contract.

14. The plaintiff seeks damages, including costs and attorney's fees provided for by the cited civil rights acts and for breach of contract.

15. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, to redress violations of Plaintiff's constitutional rights guaranteed by the 5th and 14th Amendments to the United States Constitution. Additionally, pursuant to its plenary power, this court has jurisdiction over the pendant state tort claims of breach of contract, violations of the Arkansas Resident's Rights Act and the Arkansas Civil Rights Act.

16. Venue is proper in this court in that all complained of acts occurred within the geographical boundaries of this division of the court.

III. FACTS

17. Mr. Deadner is an elderly, infirmed person, 72 years of age, born on June 8, 1937. He is African-American and is now a total care patient in that he is blind and paralyzed from a stroke on his left side and non-ambulatory.

18. During the period of his competency, Mr. Deadner contracted with Little River Nursing and Rehab for placement and provision of nursing and medical care for himself throughout the remainder of his life.

19. As described in the foregoing paragraphs, Mr. Deadner is within the groups protected by § 1981, § 1983, the ACRA, and the Long Term Care Residents' Rights Act.

20. Mr. Deadner remained a resident of Little River Nursing and Rehab, 450 West Locke Street, Ashdown, Arkansas, 71822, until June 19, 2008, when the defendants improperly removed him therefrom for no valid or legal reason and without due process.

21. During the course of his stay, a friendship developed between Mr. Deadner and an elderly white female resident who, although ambulatory, suffered from Alzheimer.

22. The female resident, with the full knowledge and encouragement of her family and Mr. Deadner's family would come over to Mr. Deadner's room and visit, keeping each other company.

23. Various staff members of the Nursing Home, including the defendants, disapproved and thought it unseemly for a white female resident to have a friendship with African-American male, and visit in his room. Various staff members, with the concurrence and approval of the defendants, sought to discourage and prohibit the behavior.

24. Due to their displeasure with the friendship, Durham and Garner and various other staff persons sought to get rid of the female resident and, if necessary, Mr. Deadner as well.

25. In furtherance of that design, on or about June 16, 2008, Durham and Garner falsely accused Mr. Deadner of improprieties of a sexual nature involving the elderly white female resident.

26. Despite their awareness that the allegations were false and unsubstantiated, Durham and/or Garner summoned the Ashdown Police. They then called Mr. Deadner's family and made the same allegations telling them that the police was there to investigate and possibly arrest Mr. Deadner.

27. They also called the female resident's son, her guardian, and made the same allegations urging him to file criminal charges against Mr. Deadner. When the son refused to do so at that time, the officer left the nursing home without affecting an arrest.

28. Both Mr. Deadner's and the female resident's families investigated the alleged incident and concluded that the incident did not occur as alleged and insisted no further action or concern was warranted.

29. Unbeknownst to Mr. Deadner or his family, on or about June 19, 2009, Durham and Garner had initiated procedures to involuntarily transfer Mr. Deadner to Wadley Hospital, Texarkana, Arkansas for geriatric psychological assessment and placement.

30. To support these discriminatory and improper actions, Garner and Durham elicited Colvert's aid without whom the psychological consult could not have been made.

31. Acting in concert with Durham, Garner called Mr. Deadner's family and told them that he was being transferred to Wadley for psychological assessment due to the inappropriate sexual conduct with the white female resident.

32. When Mr. Deadner and his family objected that an evaluation was not warranted and objected to Texarkana, Durham and Garner tried to convince them to agree instead to the

Mena Behavioral Center, Mena, Arkansas for an evaluation.

33. Additionally, Garner represented to Mr. Deadner and his family that the white female resident's son had filed criminal charges and they had to get Mr. Deadner out of the nursing home immediately.

34. This statement was a deliberate falsehood in that the female resident's son had, in no uncertain terms, told Garner, Durham, and Deaton that he was satisfied with Mr. Deadner's explanation of what had happened, was of the opinion that no impropriety happened, and he had no intention of initiating a criminal charges.

35. At the conclusion of the meeting, Garner and Durham told Mr. Deadner and his family that they would not force him to leave that night, but give the family some time to arrange another placement.

36. However, despite these assurances, Garner and Durham, contacted Mena to send an ambulance to come and transport Mr. Deadner that night.

37. Mr. Deadner was already in extreme distress over the false allegations of sexual impropriety and these efforts to send him first to Texarkana and now Mena caused him extreme mental distress and pain and suffering.

38. He began to cry out that he was afraid to go to Mena because "they hang black men there." Mr. Deadner was of the age to be all too familiar with the racial history of Mena and in light of the allegations that he had improper sexual contact with a white female, he feared for his life and was inconsolable.

39. At that point, Mr. Deadner's family had no choice but to take him home until they could locate another placement.

40. At the same time these things were occurring with the Deadner family, Deaton

refused the female resident's son's request to visit with the Deadner family, telling him that the Deadner's had removed Mr. Deadner from the Nursing Home due to his mother's actions.

41. This was a deliberate attempt to make the female resident's family and the Deadner's unaware of what was actually transpiring.

42. White male residents who had a history of actual sexual inappropriate behavior toward staff and other female residents were not treated as was Mr. Deadner and summarily forced to leave the facility.

43. Mr. Deadner receives federal assistance through Medicaid and Medicare.

44. Title 42 CFR § 483.12 governs the discharge of patients receiving federal assistance such as Medicaid and Medicare.

45. All actions of Deaton, Garner, Durham, and Colvert were done in their individual and official capacities and under the color of their authority and law; and were deliberately indifferent to Mr. Deadner's rights and privileges protected by State and Federal laws.

IV. <u>BREACH OF CONTRACT</u>

46. Plaintiff incorporates all of the allegations in paragraph 1 – 46.

47. Upon becoming a resident of the County and the Nursing Home, Mr. Deadner had a valid and enforceable express or implied contract with the Nursing Home whereby for consideration duly paid by him, or on his behalf, the Nursing Home was to provide him a place of residence, nutrition, personal care, and nursing care.

48. Into said contract was incorporated the "Resident's Bill of Rights". The Admission Agreement provides in pertinent part:

> The Nursing Facility and the Resident/Legal Guardian do hereby agree to the terms and conditions listed and set forth in this Admission Agreement. In

7

addition, the Resident/Legal Guardian acknowledges that he/she has received a copy of the RESIDENT'S BILL OF RIGHTS and that his/her rights and responsibilities as a resident have been explained orally.

49. Mr. Deadner signed the contract and placed himself into the County and the Nursing Home's care relying upon these promises and assurances that he would be treated with dignity and with respect.

50. The County and the Nursing Home intended for Mr. Deadner to rely upon these representations in order that he choose this facility.

51. The County and the Nursing Home breached these terms and provision of the contract by forcing his removal without cause from the nursing home in such a manner that caused extreme embarrassment, humiliation, defamation of character and loss of self worth and dignity.

52. Wherefore, Mr. Deadner seeks compensatory damages against the County and the Nursing Home in an amount to be determined by the jury, sufficient to provide Mr. Deadner ward with the benefit of the bargain promised to him and exceeding the minimum amount for federal jurisdiction in diversity of citizenship cases; attorney's fees and costs, and any other relief to which he is entitled.

53. As a result of said breach, Mr. Deadner is entitled to receive attorney's fees and costs pursuant to Ark. Code Ann. § 16-22-308.

V.  VIOLATION OF THE LONG TERM CARE RESIDENT'S RIGHTS STATUTE

54. Plaintiff incorporates all of the allegations in paragraphs 1 – 46.

55. The County's and the Nursing Home's responsibilities to Mr. Deadner as outlined in Ark. Code Ann. § 20-10-1201, et seq. and Ark. Code Ann. § 20-10-1204 are non-delegable in that they are directly liable for deprivations and infringements by any person or

entity under its direct and indirect control, including its employees, agent, and servants or caused by their policies, whether written or unwritten, or common practice.

56. The County and the Nursing Home owed a non-delegable duty to assist all residents including, Mr. Deadner, in attaining and maintaining the highest level of physical, mental and psychosocial well-being.

57. The County and the Nursing Home failed to meet the applicable standards of care and violated its duty of care to Mr. Deadner by failing to treat him courteously, fairly and with the fullest measure of dignity.

58. In that there was no emergency threatening the welfare of another resident as determined by a licensed professional on staff at the facility, the County and the Nursing Home violated Mr. Deadner's right to be given reasonable notice of no less than (30) days before the involuntary transfer or discharge.

59. The County and the Nursing Home failed and refused to provide Mr. Deadner written notice as required by A.C.A. § 20-10-1005 and C.A. § 20-10-1204 (a)(13).

60. The County and the Nursing Home failed to advise or otherwise facilitate Mr. Deadner's right to challenge the facilities decision to involuntary discharge him as required by Title 42 C.F.R. Part 488.12 and A.C.A. § 20-10-1204 (a)(13) & (17)(A)(i).

61. The County and the Nursing Home failed to discharge its obligations to Mr. Deadner with conscious disregard for his rights.

62. The County and the Nursing Home did not, at any time, provide written notice of discharge or transfer to Mr. Deadner.

63. The transfer or discharge was not necessary for Mr. Deadner's welfare and his needs could have been met at the Nursing Home.

64. The safety of no individual was threatened or endangered by Mr. Deadner's continued residence at the Nursing Home.

65. The conduct specified above caused Mr. Deadner to lose his personal dignity and caused him to experience extreme and unnecessary degradation and mental anguish.

66. The conduct specified above violated Title 42, Code of Federal Regulations (CFR), § 483.12, A.C.A. § 20-10-1005, and Rule 3013, Rules and Regulations of Nursing Homes/Office of Long Term Care.

67. As a result of the conduct specified above, Mr. Deadner is entitled to recover his costs incurred in this litigation, to include attorney's fees.

68. As a result of the aforementioned violations, pursuant to Ark. Code. Ann. § 20-10-1206(a) (4), Mr. Deadner is entitled to recover actual damages in an amount exceeding that required for federal court jurisdiction in diversity of citizen cases, because the aforementioned violations are the result of the County's and the Nursing Home's failure to meet its duties under the law, which caused the injuries of Mr. Deadner.

69. The aforementioned violations of the Arkansas Resident's Rights Statute by Little River Nursing and Rehab were willful, wanton, gross, flagrant, reckless, and conducted with conscious indifference to the rights of Duff Deadner and pursuant to Ark. Code Ann. § 20-10-1209(c), Mr. Deadner is entitled to punitive damages.

VI. <u>VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT (ACRA), A.C.A. § 16-123-101 ET SEQ.</u>

70. Plaintiff incorporates all of the allegations in paragraphs 1 – 46.

71. As described in the foregoing paragraphs, Mr. Deadner is within the groups protected by the ACRA.

72. The actions described above violated Mr. Deadner's rights to be free from

discrimination because of race to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place, resort, accommodation as white citizens.

73. The actions described above violated Mr. Deadner's rights to be free from discrimination because of race in contractual transactions as white citizens.

74. The actions complained described above was in deliberate indifference to Mr. Deadner's well known and established rights protected by the Arkansas Constitution and state laws. As the result thereof he is entitled to both compensatory and punitive damages

75. As a result of the specified conduct, Mr. Deadner is entitled to an award of costs to include attorney's fees.

VII. **VIOLATION OF 42 U.S.C. §§ 1981 and 1983**

76. Plaintiff incorporates all of the allegations in paragraphs 1 – 46.

77. As described in the foregoing paragraphs, Mr. Deadner is within the groups protected by 42 U.S.C. §1983 and 42 U.S.C. § 1981.

78. The actions described above violate his rights secured by § 1981 and § 1983.

79. The above recited acts and omissions of the defendants, while each was acting under color of law and his or her authority constitute a deprivation of Mr. Deadner's constitutional, federal, and state rights to contract and to be free of racial discrimination. Such acts of the defendants while acting within the color of their authority are sufficient to invoke actions under 42 U.S.C. §§ 1981 and 1983.

80. The actions complained described above was in deliberate indifference to Mr. Deadner's well known and established rights protected by the U.S. Constitution, as well as federal and State laws. As the result thereof he is entitled to both compensatory and punitive damages.

81. As a result of the specified conduct, pursuant to 42 U.S.C. § 1988, Mr. Deadner is entitled to an award of costs to include attorney's fees.

82. Plaintiff reserves the right to plead further and amend as discovery warrants.

### PRAYER

WHEREFORE, Plaintiff, Sarah Deadner, as guardian of the Estate and Person of Duff Deadner, prays judgment against the defendants jointly and severally as follows:

a. For damages in an amount adequate to compensate Mr. Deadner for his damages sustained;

b. For attorney's fees and cost of litigating this case pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1988 and A. C. A. § 16-22-308.

e. For punitive damages sufficient to punish Little River Nursing Home for its egregious and malicious misconduct in reckless disregard and conscious indifference to the consequences to Duff Deadner and to deter it and others similarly situated from repeating such atrocities.

f. For all other relief to which Plaintiff is entitled by federal and Arkansas law.

83. Plaintiff requests a jury trial.

Respectfully submitted for
Sarah Deadner, Guardian of the Estate
and Person of Duff Deadner

*/s/ Morris W. Thompson*
Morris W. Thompson ABN80145

Morris W. Thompson Law Firm P.A.
P.O. Box 662
Little Rock, AR 72203
(501)661-8100

Fax: 372-4101
Email:mwthompsonlaw@sbcglobal.net