IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

SARAH DEADNER as Guardian of
the Estate and Person of DUFF DEADNER,
an incapacitated person                                                                                    PLAINTIFF

vs.                                         Civil No. 4:10-cv-04029

LITTLE RIVER NURSING
HOME, INC., *et al*                                                                                        DEFENDANTS

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before this Court is separate Defendants, Little River Nursing Home, Inc., Angela Durham, David Deaton, and Brenda Garner Motion to Dismiss Second Amended Complaint. ECF No. 40. Plaintiff filed a response to this Motion. ECF No. 42. The separate Defendants have filed a reply to Plaintiff's response. ECF No. 44. A hearing was held on this Motion on January 13, 2011. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable Harry F. Barnes referred this Motion to this Court for the purpose of making a report and recommendation. In accordance with that referral, this Court enters the following report and recommendation.

**1. Background**

Sarah Deadner, as guardian of Duff Deadner, has brought this action seeking relief on allegations of violations of 42 U.S.C. §1981, 42 U.S.C. §1983, the Arkansas Civil Rights Act of 1993, the Arkansas Long Term Care Resident's Statute, and breach of contract. ECF No. 38. Defendants seek to dismiss all of Plaintiff's claims pursuant to FED. R. CIV. P. 12(b)(6). ECF No. 40.

According to Plaintiff, who is African-American, he contracted with Defendant Little River

1

Nursing Home, Inc. ("LRNH") in August 2007 for nursing and medical care. ECF No. 38, Pg. 4. During his stay at LRNH, Plaintiff developed a relationship with a white female resident of the nursing home. ECF No. 38, Pg. 4. Plaintiff alleges Defendants Angela Durham ("Durham"), and Brenda Garner ("Garner") and other staff persons sought to get rid of the female resident and if necessary, Plaintiff, due to their displeasure of the relationship. ECF No. 38, Pgs. 4-5.

In June 2008, according to Plaintiff, Durham and Garner accused Plaintiff of improprieties of a sexual nature which were investigated by the Ashdown, Arkansas Police Department. Neither the family of Plaintiff nor the family of the white female patient chose to pursue the allegations and no further action was taken by police. ECF No. 38, Pg. 5.

According to Plaintiff, in June of 2009, Durham and Garner attempted to involuntarily transfer Plaintiff to Wadley Hospital, Texarkana, Arkansas for geriatric psychological assessment and placement. Plaintiff's family objected to this assessment. Following this, Plaintiff states Durham and Garner attempted to transfer Plaintiff to Mena, Arkansas for an evaluation. ECF No. 38, Pgs. 5-6. At this point, Plaintiff became upset because he was "familiar with the racial history of Mena." As a result, it is alleged that Plaintiff's family had no choice but to take Plaintiff home until they could locate another nursing home. ECF No. 38, Pg. 7.

**2. Applicable Law**

The Defendants contend that the Plaintiff's pleading is deficient pursuant to the Supreme Court's rulings in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*,___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint

2

must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009)(quoting *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Braden*, 588 F.3d at 594 (quoting *Iqbal*, 129 S. Ct. at 1949). The standard does "not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), or reasonable inference, that the "defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

However, "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal,* 129 S.Ct. at 1949, (quoting *Twombly*, 550 U.S. at 570). A pleading that merely pleads "labels and conclusions," or a "formulaic recitation" of the elements of a cause of action, or "naked assertions" devoid of factual enhancement will not suffice. *Id.* Determining whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950.

**3. Discussion**

    **A. Qualified Immunity**

Durham, Garner and David Deaton, ("Individual Defendants") argue they are entitled to qualified immunity. ECF No. 41, Pgs. 2-6. Under qualified immunity, state actors are protected from civil liability when their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity analysis requires a three-pronged inquiry: (1) Did Plaintiff establish the violation of a constitutional right; (2)

was such constitutional right in question "clearly established" at the time of the allegation; and (3) were the Defendants' actions "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005). Furthermore, qualified immunity questions should be resolved at the earliest possible stage to shield public officials from disruptive effects of broad ranging discovery and effects of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n. 6 (1987).

First, the Court must decide if the facts alleged, taken in the light most favorable to Plaintiff, demonstrate a violation of a federal constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001). In this case, the facts provided by Plaintiff and assuming all to be true, show: (1) An allegation of sexual impropriety against Plaintiff occurred; (2) Personnel with LRNH contacted the local law enforcement regarding this allegation; (3) The families of those involved were also contacted; (4) There were no charges filed against any individuals or Plaintiff; (5) Employees of LRNH supervised Plaintiff's activities for a period of time; (6) Personnel with LRNH contacted Plaintiff's family regarding a geriatric psychiatric consultation at Wadley Hospital in Texarkana; (7) Plaintiff's family rejected the facility recommendation and the consultation; (8) Personnel with LRNH made a second recommendation to a facility located in Mena, Arkansas; (9) Plaintiff's family rejected the facility recommendation in Mena based on the fact that Plaintiff was familiar with the bad racial history in Mena; and (10) Plaintiff's family voluntarily removed Plaintiff from LRNH.

These facts do not show a violation of a constitutional right. The allegations of fact involve claims of sexual improprieties between Plaintiff and a female resident. The facts do not support disparate treatment based on race. In fact, Plaintiff alleges that "Durham and Garner and various other staff persons sought to get rid of the female resident and, if necessary, Mr. Deadner as well."

4

ECF No. 38, Pg. 4-5.

Based on Plaintiff's failure to show a violation of a constitutional right, there is no need to address the remaining two steps of the qualified immunity analysis of whether such constitutional right in question was "clearly established" at the time of the allegation and were the Defendants' actions objectively reasonable. Therefore, it is recommended that the Individual Defendants be granted qualified immunity and all claims against them in their individual capacity should be dismissed as a matter of law.[1]

### B. Plaintiff's §1981 Claim

Defendants argue Plaintiff's §1981 claim fails because a federal action to enforce rights under §1981 against a state actor may only be brought pursuant to §1983. *See Artis v. Francis Howell North Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998). ECF No. 41, Pg. 8. Plaintiff has done just this as he set forth in his Second Amended Complaint:

> The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983, to redress violations of Plaintiff's constitutional rights guaranteed by the 5th and 14th Amendments to the United States Constitution. Additionally, pursuant to its plenary power, this court has jurisdiction over the pendant state tort claims of breach of contract, violations of the Arkansas Resident's Rights Act and the Arkansas Civil Rights Act.

ECF No. 42, Pg. 9.

It is clear that Plaintiff is in fact bringing his §1981 claim pursuant to §1983. Therefore, it is recommended that Plaintiff's § 1981 claim be dismissed. Plaintiff's claims are properly considered brought pursuant to § 1983.

---

[1] Given this recommendation, this Court does not address the Individual Defendants' argument that they are entitled to statutory immunity, (ECF No. 41, Pgs. 6-7) and Defendant Deaton's argument that no claims were made against him. ECF No. 38, Pg. 7.

### C. Plaintiff's §1983 Claims

Plaintiff brings §1983 claims against LRNH and the Individual Defendants in their official capacity. The "real party in interest in an official-capacity suit is the governmental entity and not the named official." *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004). Thus, an official-capacity suit is treated as a suit against the governmental entity. *Id*.

In a §1983 suit against a municipality, the Court must determine two issues: (1) whether a Plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation. *Stauch v. City of Columbia Heights*, 212 F.3d 425, 429 (8th Cir. 2000). A governmental entity is responsible for a constitutional violation when a custom or policy causes the violation. *Id.* at 432.

First, the Court must decide if the facts alleged, taken in the light most favorable to Plaintiff, demonstrate a violation of a constitutional right that caused harm. As discussed previously, Plaintiff has not adequately asserted a violation of his constitutional rights. Although the analysis Plaintiff's could §1983 claims could end here, the Court will also address whether there has been a showing of a custom or policy which resulted in a violation of his constitutional rights.

Defendants assert that under § 1983, Plaintiffs cannot demonstrate either an official policy or a pervasive custom or usage resulting in discrimination. *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). This Court will address each of these arguments.

### 1. Official Policy

Plaintiff may establish liability under § 1983 "by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' . . . ." *Ware*, 150 F.3d at 880 (quoting *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978)). An official policy arises when an official, who has the final authority to establish governmental policy in a particular area,

makes a deliberate choice to follow a particular course of action from among a variety of alternatives. *Jane Doe "A" v. Special School Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990). Defendants assert Plaintiff has failed to allege an official policy established by an official with final policymaking authority that caused the constitutional violations of which Plaintiff complains.

The Amended Complaint does not state a policy established by LRNH which required its employees to act in a discriminatory fashion. Instead, Plaintiff argues that a policy is established because the Individual Defendants have final authority at LRNH. ECF No. 38, Pg. 8. However, the Supreme Court has distinguished final policymaking authority from final decision making authority. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-482. The fact that a particular official, even a policymaking official, has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. *Id.* Municipal liability attaches only where the decision maker possesses final authority to establish municipal policy with respect to the action ordered. *Id.*

In this matter, Plaintiff's Amended Complaint does not allege a policy established by LRNH through which the individual Defendants acted to violate any federal rights of Plaintiff.

### 2. Custom or Usage

Defendants also argue Plaintiff has not sufficiently alleged "misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a 'custom or usage' with the force of law.'" *Ware*, 150 F.3d at 880 (quoting *Monell*, 436 U.S. at 691). A governmental entity cannot be sued based on a theory of *respondeat superior* for injury allegedly inflicted by its employees. *Andrews v. Fowler*, 98 F.3d 1069, 1074 (8th Cir. 1996). To demonstrate 'custom or usage' with the force of law, Plaintiffs must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice of the officials of that conduct; and
> (3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff argues he establishes a practice of disparate treatment along racial lines of the male residents by alleging the white male residents who had a history of actual sexual inappropriate behavior toward staff and other female residents were not treated as was Plaintiff and then summarily discharged from LRNH. ECF No. 38, Pg. 7. A pleading that offers merely labels and conclusions or naked assertions, devoid of further factual enhancement, does not plausibly establish entitlement to relief under any theory. *C.N. v. Willmar Public School*, 591 F3d 624, 634 (8th Cir. 2010). In this case, Plaintiff's Amended Complaint does not contain sufficient factual allegations of pervasive misconduct to constitute a custom or usage resulting in discrimination.

Therefore it is recommended that Defendants Motion to Dismiss, as to Plaintiff's claims based upon a violation of 42 U.S.C. § 1983, be granted.

### D. Plaintiff's §1985 Claim

According to the Individual Defendants, Plaintiff has previously admitted to having no claim under 42 U.S.C. § 1985. ECF No. 34, Pg. 12. Plaintiff states this claim was inadvertently reinserted in his most recent Amended Complaint. ECF No. 42, Pg. 14. Plaintiff again states the intra-corporate conspiracy doctrine shields the individual Defendants from liability under § 1985 and Plaintiff moves to dismiss this claim.

Based on the above, this Court recommends Plaintiff's §1985 claim be dismissed.

### E. Plaintiff's State Law Claims[2]

Plaintiff has alleged causes of action based on Defendants violation of the Arkansas Civil Rights Act of 1993; the Long Term Care Resident's Rights Statute; and breach of contract. ECF No. 38, Pg. 9-13. Defendants seek dismissal of each of these state law claims.

#### 1. Arkansas Civil Rights Act of 1993

Plaintiff has alleged Defendants violated the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq*. Both parties agree the Arkansas Civil Rights Act was crafted with 42 U.S.C. § 1983 in mind. ECF No. 41, Pg. 11 and ECF No. 42, Pg. 14. In fact the Arkansas Civil Rights Act expressly instructs courts to look to federal civil-rights law when interpreting the Act. *See* Ark. Code Ann. § 16-123-105(c).

Plaintiff does not allege any facts specific to the Arkansas Civil Rights Act. As a result the same analysis used in deciding Plaintiff's claims based on a violation of 42 U.S.C. § 1983 would be used in deciding Plaintiff's claim based on a violation of the Arkansas Civil Rights Act.

Based on the analysis above regarding Plaintiff's claims based on a violation of 42 U.S.C. § 1983, this Court also recommends Defendants Motion to Dismiss, as to Plaintiff's claims based upon a violation of Arkansas Civil Rights Act, be granted.

#### 2. Plaintiff's Claim Based on Arkansas Long Term Care Resident's Right Act

Plaintiff has alleged Defendants violated the Arkansas Long Term Care Resident's Right Act. *See* Ark. Code Ann. § 20-10-1201 *et seq*. Specifically, Plaintiff states the Defendants violated his rights by failure to provide him no less than thirty (30) days notice of any involuntary transfer or discharge as set out in Ark. Code Ann. § 20-10-1204(a)(12)(A) and failure to allow him the right to

---

[2] This Court will exercise supplemental jurisdiction of the alleged state law claims pursuant to 28 U.S.C. § 1367.

challenge the decision of a transfer or discharge as set forth in Ark. Code Ann. § 20-10-1204(a)(13). ECF No. 38, Pgs. 10-12.

According to Plaintiff, in June of 2009, Durham and Garner attempted to involuntarily transfer Plaintiff to Wadley Hospital, Texarkana, Arkansas for geriatric psychological assessment and placement. Plaintiff's family objected to this assessment. Following this, Plaintiff states Durham and Garner attempted to transfer Plaintiff to Mena, Arkansas for an evaluation. ECF No. 38, Pgs. 5-6. It is alleged by Plaintiff that in both cases, there was no notice given prior to the attempted transfer. ECF No. 38, Pg.11. According to Plaintiff, after this second attempted transfer, Plaintiff's family had no choice but to take Plaintiff home until they could locate another nursing home. ECF No. 38, Pg. 7.

Plaintiff states there was no emergency threatening the welfare of another resident, the transfer or discharge was not necessary for Plaintiff's welfare, and no other individual was threatened or endangered by Plaintiff's continued residence at LRNH. ECF No. 38, Pg. 11.

Pursuant to Fed. R. Civ. R. 8(a)(2) a complaint need only contain a short plain statement of the claim showing that the pleader is entitled to relief. Plaintiffs Amended Complaint is in compliance with this rule. Furthermore, Plaintiff's Amended Complaint alleges a cause of action pursuant to the Arkansas Long Term Care Resident's Right Act and the complaint provides Defendants with sufficient facts to demonstrate the plausibility of his claim. *See Hawks v. J.P. Morgan Chase Bank,* 591 F.3d 1043, 1049 (8th Cir. 2010).

Based on the analysis above, this Court recommends Defendants Motion to Dismiss, as to Plaintiff's claims based upon a violation of Arkansas Long Term Care Resident's Right Act, be denied.

### 3. Plaintiff's Claim Based on Breach of Contract

According to Plaintiff's Amended Complaint, Plaintiff and LRNH entered into a contract for a place of residence, nutrition, personal care and nursing care. ECF No. 38, Pg. 12. Plaintiff sates consideration was "duly paid by him" for these services. ECF No. 38, Pg. 12. According to Plaintiff, into said contract was incorporated the "Resident's Bill of Rights", which included the right to be treated with dignity and respect. ECF No. 38, Pg. 12. Plaintiff alleges LRNH breached the terms of the contract by forcing his removal from the nursing without cause in such a manner that caused him embarrassment, humiliation, defamation of character and loss of self worth and dignity. ECF No. 38, Pg. 13. Plaintiff seeks compensatory damages for the alleged breach. ECF No. 38, Pg. 13.

Pursuant to Fed. R. Civ. R. 8(a)(2) a complaint need only contain a short plain statement of the claim showing that the pleader is entitled to relief. Plaintiffs Amended Complaint is in compliance with this rule. Plaintiff's Amended Complaint alleges as follows: (1) Plaintiff and LRNH entered into a contract, (2) LRNH breached this contract, and (3) Plaintiff suffered damages as a result of the breach. Plaintiff's Amended Complaint alleges a cause of action based on breach of contract and the complaint provides LRNH with sufficient facts to demonstrate the plausibility of this claim. *See Hawks v. J.P. Morgan Chase Bank,* 591 F.3d 1043, 1049 (8th Cir. 2010).

Based on the analysis above, this Court recommends Defendants Motion to Dismiss, as to Plaintiff's claims based upon breach of contract, be denied.

### 4. Conclusion

Accordingly, based upon the foregoing, this Court recommends Defendant's Motion to Dismiss (ECF No. 40) be **GRANTED IN PART and DENIED IN PART.** This Court recommends

the Motion be **GRANTED** as to the Individual Defendants entitlement to Qualified Immunity and all claims against them in their individual capacity should be dismissed as a matter of law.  This Court recommends the Motion be **GRANTED** as to Plaintiff's claims based upon a violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983**,** 42 U.S.C. § 1985**,** and the Arkansas Civil Rights Act of 1993.  This Court recommends the Motion be **DENIED** as to Plaintiff's claims based upon a violation of Arkansas Long Term Care Resident's Rights Act and breach of contract**.**

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.**  *See Thompson v. Nix***, 897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 13th day of May, 2011.**

/s/   Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE